IGNACIA S. MORENO, Assistant Attorney General
Environment & Natural Resources Division
LESLIE M. HILL, Trial Attorney
MICHELLE R. LAMBERT, Trial Attorney
U.S. Department of Justice
Environmental Defense Section
P.O. Box 23986, Washington, DC 20044-3986
Tel.: (202) 514-0375; Fax: (202) 514-8865
leslie.hill@usdoj.gov; michelle.lambert@usdoj.gov
*Attorneys for Defendants*

MICHAEL E. WALL (Cal. Bar No. 170238)
Natural Resources Defense Council
111 Sutter Street, 20th Fl., San Francisco, CA 94104
Tel: (415) 875-6100; Fax: (415) 875-6161
mwall@nrdc.org
*Attorney for Plaintiffs Arc Ecology, Natural Resources
Defense Council, and San Francisco Baykeeper,*

EDMUND G. BROWN JR., Attorney General of California
CHRISTIANA TIEDEMANN,
    Supervising Deputy Attorney General
TARA MUELLER, Deputy Attorney General
1515 Clay Street, 20th Floor, Oakland, CA  94612-0550
Tel:  (510) 622-2218; Fax: (510) 622-2270
chris.tiedemann@doj.ca.gov*;* tara.mueller@doj.ca.gov
*Attorneys for Plaintiff-Intervenor California Regional Water
Quality Control Board, San Francisco Bay Region*
[Additional Counsel on Signature Page]

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARC ECOLOGY, et al.,<br>                                    Plaintiffs,<br>and<br>CALIFORNIA REGIONAL WATER<br>QUALITY CONTROL BOARD, SAN<br>FRANCISCO BAY REGION,<br>                          Plaintiff-Intervenor<br>v.<br>UNITED STATES MARITIME<br>ADMINISTRATION, et al.,<br>                          Defendants. | 2:07-CV-2320 GEB KJN<br><br>**CONSENT DECREE**<br><br>Judge:        Hon. Garland E. Burrell, Jr. |

# I.     BACKGROUND AND INTRODUCTION

WHEREAS, on December 6, 2007, Plaintiffs Arc Ecology, San Francisco BayKeeper and Natural Resources Defense Council (collectively, the "Environmental Plaintiffs") filed a first amended complaint for declaratory and injunctive relief in this Court, alleging that Defendants U.S. Maritime Administration ("MARAD"), the Maritime Administrator, United States Department of Transportation, and the Secretary of Transportation (hereafter collectively referred to as "Defendants"), are in violation of the Clean Water Act ("CWA"), the Resource Conservation and Recovery Act ("RCRA"), California's Hazardous Waste Control Law ("HWCL"), the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA") with respect to the operation and management of non-retention vessels at the National Defense Reserve Fleet at Suisun Bay (hereafter "Suisun Bay Reserve Fleet" or "SBRF"), located in the City of Benicia in Solano County, California.  Environmental Plaintiffs' complaint seeks declaratory and injunctive relief under the CWA, RCRA, NEPA, and the APA, civil penalties under RCRA, and attorneys' fees and costs;

WHEREAS, on November 14, 2008, Plaintiff-Intervenor California Regional Water Quality Control Board, San Francisco Bay Region (hereafter "Plaintiff-Intervenor" or "Regional Board") filed a complaint in intervention, also alleging that Defendants are in violation of the CWA in operating and managing non-retention vessels at the SBRF.  Plaintiff-Intervenor seeks declaratory and injunctive relief under the CWA, civil penalties to the extent authorized under the CWA, and attorneys' fees and costs.  Environmental Plaintiffs and Plaintiff-Intervenor are hereafter collectively referred to as "Plaintiffs."  Plaintiffs and Defendants are hereafter collectively referred to as the "Parties;"

WHEREAS, Plaintiffs allege that, during the six years preceding the filing of the complaints and on a continuing basis, Defendants have discharged, and are continuing to discharge, pollutants from point source non-retention SBRF vessels into waters of the United States without first obtaining a valid National Pollutant Discharge Elimination System ("NPDES") permit from the Regional Board, in violation of section 301(a) of the CWA (33 U.S.C. § 1311(a)).  Plaintiff-Intervenor further alleges that, for the same reasons, Defendants have violated, and are continuing to violate, section 402(a) of the CWA (33 U.S.C. § 1342(a)).  Environmental Plaintiffs further allege that Defendants have violated, and are continuing to violate, section 3006(b) of RCRA (42 U.S.C. § 6961(b)) and California's Hazardous Waste Control Law (Cal. Health & Safety Code § 25100 et seq.) by accepting, storing and/or disposing of hazardous waste without a hazardous waste facilities permit, and have violated, and are continuing to violate, section 4005(a) of RCRA (42 U.S.C. § 6945(a)) by engaging in open dumping of solid and hazardous waste;

WHEREAS, Claims 1-4 of Environmental Plaintiffs' First Amended Complaint (Dkt. No. 14) raised claims under NEPA and the APA.  On March 28, 2008, the parties filed a stipulation (Dkt. No. 26) to, inter alia, stay litigation of Claims 1-4 while Defendants prepared either a final environmental assessment ("EA") and finding of no significant impact ("FONSI") or a record of decision and a final environmental impact statement.  The Court approved and entered the parties' stipulation regarding Plaintiffs' NEPA claims (Dkt. No. 27).  Defendants provided notice of its final EA and FONSI on September 8, 2009.  Pursuant to paragraph 5 of the Joint Stipulation and Order Regarding Plaintiffs' NEPA Claims (Dkt. No. 27), and Fed. R. Civ. P. 15(a)(2), Plaintiffs amended their First Amended Complaint to withdraw Claims 1-4 (Dkt. No.

103).  The Court approved Environmental Plaintiffs' amendment on October 19, 2009 (Dkt. No. 104);

WHEREAS, on January 21, 2010, the Court issued an order that held that: Defendants have, since at least October 5, 2007, discharged pollutants from each SBRF non-retention vessel without a valid NPDES permit in continuous violation of the CWA, 33 U.S.C. § 1311(a); Defendants have, since at least October 29, 2002, continuously stored exfoliated paint that is hazardous waste on SBRF non-retention vessels without a permit, in violation of California's Hazardous Waste Control Law, Cal. Health & Safety Code §§ 25201(a), 25189.5, 25189.2, and Section 6001(a) of RCRA, 42 U.S.C. § 6961(a); and the Court lacked jurisdiction over the Environmental Plaintiffs' claim under RCRA § 4005(a), 42 U.S.C. § 6945(a);

WHEREAS, the Parties have engaged in settlement negotiations in an attempt to resolve the Plaintiffs' claims;

WHEREAS, the Parties desire to completely and finally resolve all the claims alleged in the Plaintiffs' complaints without further litigation;

WHEREAS, this Consent Decree is entered into between the Parties for the purposes of settlement and does not constitute an admission by Defendants of any fact or legal theory or of any violation of federal law or regulation;

WHEREAS, the Parties agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest;

THEREFORE, with the consent of the Parties to this Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II.    JURISDICTION AND VENUE

1.    This Court has jurisdiction to enter this Consent Decree pursuant to 33 U.S.C. § 1365(a), 42 U.S.C. § 6972(a), and 28 U.S.C. § 1331.

2.    Pursuant to 33 U.S.C. § 1365(c)(1), 42 U.S.C. § 6972(a) and 28 U.S.C. § 1391(e)(2), venue lies in this judicial district because the SBRF is located in, and the actions alleged in the complaints occurred in, this judicial district.

3.    Solely for purposes of this Consent Decree and any action to enforce this Consent Decree, Defendants consent to this Court's jurisdiction and to venue in this judicial district.

## III.    APPLICABILITY

4.    The provisions of this Consent Decree shall apply to, inure to the benefit of, and be binding upon the Environmental Plaintiffs, the Regional Board, and the Defendants, and the Parties' officers, directors, employees, and agents, and any successors in interest and assigns, as to matters that might reasonably include compliance with any provisions of this Decree.

## IV.    DEFINITIONS

5.    Except as otherwise provided herein, the terms used in this Consent Decree shall have the meaning given those terms in the CWA, 33 U.S.C. § 1362, RCRA, 42 U.S.C. § 6903, and those statutes' implementing regulations.  The following terms, as used in this Consent Decree and for purposes of this Decree only, are defined as follows:

4

(a)     "Consent Decree" shall mean this Consent Decree and all attachments hereto and all modifications to this Consent Decree.

(b)     "Day" shall mean a calendar day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

(c)     "Effective Date" shall mean the date on which this Consent Decree is entered by the Court.

(d)     "Exfoliated Paint" shall mean paint and associated dust and debris that have entirely separated from a Vessel surface.

(e)     "Exfoliating Paint" shall mean paint that is not yet entirely separated from a Vessel surface but that can be removed from the surface with a hand scraper forced into and under cracks in the painted surface.

(f)     "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an uppercase or lowercase letter.

(g)     "Remove for Disposal" or "Removed for Disposal" shall mean the permanent removal of a Vessel from the Suisun Bay Reserve Fleet:  pursuant to a contract or agreement for subsequent disposal pursuant to 16 U.S.C. § 5405, 46 U.S.C. § 57102, 46 U.S.C. § 57103 or 16 U.S.C. § 1220(a); or as lawfully authorized pursuant to the U.S. Navy's SINKEX program; or for disposal as otherwise provided by law.

(h)     "Section" shall mean a portion of this Consent Decree identified by a capitalized roman numeral.

5

(i)      "Vessel" or "Vessels" shall mean the non-retention vessels that are anchored at the SBRF as of November 1, 2009 as described in Exhibit A, which is attached to the Proposed Consent Decree filed in this case on April 9, 2010 and located on the docket at entry 124.

**V.   INJUNCTIVE RELIEF**

6.      Defendants shall undertake the following activities on or before the dates or within the time periods specified below:

(a)      **NPDES Permit for Discharges from SBRF Non-Retention Vessels**

(1)      Notice of Intent to Comply

(i)      Within 14 days of the Effective Date, Defendants will submit to the Regional Board a Notice of Intent to Comply ("NOIC") and acknowledge that they are obligated by law to comply with the terms of State Water Resources Control Board, Water Quality Order No. 97-03-DWQ, National Pollutant Discharge Elimination System (NPDES) General Permit No. CAS000001, Waste Discharge Requirements for Discharges of Storm Water Associated with Industrial Activities Excluding Construction Activities (hereafter "General Permit").

(ii)      Should the State Water Resources Control Board ("State Water Board") issue a new or revised NPDES Permit for Discharges of Storm Water Associated with Industrial Activities, Defendants shall submit another NOIC with respect to such new or revised general permit as required by paragraph E.8 of the General Permit and shall submit a new or revised storm water pollution prevention plan ("SWPPP") if required by the general permit then in effect.

(iii)     If Defendants ever vacate the property on which the SBRF is located, Defendants shall file a Notice of Termination to the Regional Board.  Upon receipt of such notice, the Regional Board shall terminate the Defendants' requirement to comply with the General Permit with respect to the SBRF facility.

(2)     <u>Storm Water Pollution Prevention Plan</u>.  Concurrently with submittal of the NOIC, Defendants shall submit a SWPPP in compliance with the requirements of the General Permit.  The SWPPP shall be in the same form and content as that attached as Exhibit B to the Proposed Consent Decree filed in this case on April 9, 2010 and located on the docket at entry 124.  The Regional Board, by and through its staff, will accept and approve the SWPPP if it is submitted in the same form and content as that attached as Exhibit B.

(b)     **Removal of Exfoliating and Exfoliated Paint**

(1)     Except as otherwise provided in Paragraph 6(b)(5) below, Defendants will remove or encapsulate exfoliating and exfoliated paint above the waterline from the exterior Vessel surfaces (including hulls and topsides) in dry-dock of 25 Vessels, including all Vessels with Condition Coating #1 or #2, listed in Exhibit A by September 30, 2011.

(2)     Except as otherwise provided in Paragraph 6(b)(5) below, Defendants will remove or encapsulate exfoliating and exfoliated paint above the waterline from the exterior Vessel surfaces (including hulls and topsides) in dry-dock or at the SBRF fleet site from all Vessels in Exhibit A, other than those described in Paragraph 6(b)(1), within two years of the Regional Board's approval of the SWPPP or by March 31, 2012, whichever is later.  If paint removal from exterior vessel surfaces above the waterline is conducted at the SBRF fleet site,

Defendants agree to conduct such paint removal activities pursuant to a SWPPP reviewed and approved by the Regional Board and required by the General Permit.

(3)    Except as provided in Paragraph 6(b)(1), the order of cleaning the Vessels listed in Exhibit A shall be determined solely by MARAD.

(4)    Before Defendants may encapsulate (rather than remove) exfoliating and exfoliated paint pursuant to Paragraph 6(b)(1), Defendants shall first provide Plaintiffs with a written description of the paint encapsulation methods and materials and their effectiveness in preventing or eliminating discharges of exfoliating and exfoliated paint, and said methods and materials must be approved by the Regional Board.  If Defendants determine that encapsulation of exfoliating and exfoliated paint pursuant to Paragraph 6(b)(2) is required or preferred, Defendants agree to revise the SWPPP to specifically describe paint encapsulation methods and materials and their effectiveness in preventing or eliminating discharges of exfoliating and exfoliated paint, and to submit such SWPPP to the Regional Board for review and approval, prior to performing any encapsulation.

(5)    Exceptions to requirements to remove exfoliating and exfoliated paint above the waterline on exterior vessel surfaces:

(i) Any of the 25 Vessels otherwise subject to Paragraph 6(b)(1) that are Removed for Disposal prior to September 30, 2011 for use in the United States Navy's SINKEX program shall not be subject to Paragraph 6(b)(1).

(ii) Any of the remaining Vessels otherwise subject to Paragraph 6(b)(2) that are Removed for Disposal prior to the deadline specified in Paragraph 6(b)(2) for use in the Navy's SINKEX program shall not be subject to Paragraph 6(b)(2).

(iii) Any other Vessel otherwise subject to Paragraph 6(b)(1) or 6(b)(2) that is designated to be Removed for Disposal by the deadlines specified in those Paragraphs for donation to an organization specified in 46 U.S.C. § 57103, sale for reuse, artificial reefing, or other removal as provided by law (including but not limited to special legislation directing the disposition of a particular Vessel) shall be excepted from the requirements of Paragraphs 6(b)(1) or 6(b)(2) if approved by the Regional Board.

(iv)  Any Vessel that is Removed for Disposal to a ship-recycling facility in the San Francisco Bay Area within one year of the Effective Date shall not be subject to Paragraph 6(b)(1) or 6(b)(2).

(6)     Any Vessel that is Removed for Disposal before the Effective Date shall be counted toward completion of removal or encapsulation of exfoliating or exfoliated paint by September 30, 2011 as provided for in Paragraph 6(b)(1).

(7)     Removal of Exfoliated Paint From Exterior Horizontal Surfaces. Defendants will:

(i) within 120 days of the Effective Date, remove exfoliated paint from the exterior horizontal surfaces of each Vessel that is still moored at the SBRF; and

(ii) following either the initial removal of exfoliated paint from a Vessel as described in the preceding subparagraph or the return of a Vessel to the SBRF after removal of exfoliating or exfoliated paint in dry-dock as described in Paragraphs 6(b)(1) and 6(b)(2), remove exfoliated paint on the exterior horizontal surfaces of each Vessel that is still moored at the SBRF at least once every 90 days;

(iii) conduct all such work by shoveling, HEPA vacuuming, and/or sweeping or other method that will not result in a discharge of any pollutant to the surrounding waters.

(8)     Disposition of Exfoliated and Removed Paint.  Defendants shall ensure that all paint and debris collected or removed from any Vessel is properly characterized, stored, removed, transported, and disposed of in accordance with the requirements of applicable federal, state and local laws and regulations.  Defendants shall manage any exfoliated paint from Vessels (including without limitation paint removed and/or collected pursuant to this Consent Decree), and all mixtures of such paint and other materials, as hazardous waste and subject to the requirements of RCRA Subtitle C, California's HWCL, and implementing regulations, unless and until Defendants properly characterize such material and determine that it does not exhibit a characteristic of hazardous waste and is not hazardous waste.

(9)     If, for any reason, including any force majeure event as defined in Paragraph 12, any Vessel from which exfoliating paint was previously removed pursuant to Paragraph 6(b)(1) or 6(b)(2) remains in the SBRF for a period of 5 years following the initial removal of exfoliating paint, Defendants shall once again remove any exfoliating paint from said Vessel within 6 months after expiration of the 5-year period, unless otherwise authorized by the Regional Board.

(c)     **Removal for Disposal**.

(1)     Defendants shall Remove for Disposal Vessels listed in Exhibit A according to the schedule below.  The order of removal of the Vessels listed in Exhibit A shall be determined solely by MARAD, except that Defendants shall insure that the 25 Vessels, including all Vessels with Condition Coating #1 or #2, referenced in Paragraph 6(b)(1), will all be

Removed for Disposal on or before September 30, 2013, unless the parties otherwise agree in writing.

| Completed By: | Cumulative Number of Vessels Removed for Disposal: |
|---|---|
| September 30, 2010 | 10 |
| September 30, 2011 | 20 |
| September 30, 2012 | 28 |
| September 30, 2013 | 32 |
| September 30, 2014 | 38 |
| September 30, 2015 | 44 |
| September 30, 2016 | 50 |
| September 30, 2017 | 57 |

(2)     The parties shall meet and confer on or before September 30, 2012 to determine if a more aggressive Vessel removal schedule is feasible.  If the parties agree that a more aggressive Vessel removal schedule is feasible, the Parties will submit to the Court for approval a proposed revision to the removal schedule set forth in this Paragraph 6(c).

## VI.   INSPECTIONS, REPORTING, AND RECORD RETENTION

7.     **Reporting**.  Defendants shall provide reports related to exfoliating and exfoliated paint removal and Vessels Removed for Disposal as follows:

(a)     Defendants shall prepare and provide to Plaintiffs and to the Court quarterly status reports on Defendants' implementation of this Consent Decree.

(1)     Each such status report shall indicate the number of Vessels to be Removed for Disposal in the following quarter, and if practicable, a description of the Vessels to be Removed for Disposal.  Each status report shall also describe each Vessel Removed for

Disposal in the preceding quarter and the disposition of such Vessel.  In addition, such report shall describe exfoliating and exfoliated paint removal for each Vessel that has been remediated in the preceding quarter and for each Vessel undergoing remediation at the time of the report, as follows: the status of removal of exfoliating and exfoliated paint and the characterization, removal, storage, transportation and disposal of any hazardous waste associated with removal of such paint and debris.  The report shall include copies of the Vessel Condition Summary Report for the preceding quarter and copies of all hazardous waste manifests for any material disposed of by Defendants from the SBRF.

(2)     Defendants shall post the quarterly status reports on MARAD's web site.

(3)     In providing the quarterly status reports, Defendants are not required to disclose procurement, business-sensitive or proprietary information that is subject to a confidentiality agreement with a third party and/or applicable privilege or exemption from disclosure.

(b)     Consistent with the requirements of Federal Acquisition Regulations and other applicable laws and regulations, Defendants shall post copies of ship-specific removal project schedules on MARAD's website.

(c)     Defendants shall also provide Plaintiffs with copies of all storm water monitoring results and reports within 21 days after such results and reports are received or produced by Defendants.

(d)     Defendants shall provide Plaintiffs with 48 hours advance notice (or if 48 hours notice is not practicable, as much advance notice as is practicable) before moving any Vessel to conduct paint removal pursuant to Paragraphs 6(b)(1) or 6(b)(2) and before removing any Vessel

for disposal pursuant to Paragraph 6(c).  The notice required by this paragraph may be provided by electronic mail.

8.      **Record Retention**.  Defendants shall retain and maintain copies of all reports, certifications and other submissions required under this Consent Decree for the duration of this Decree.

9.      **Document Disclosure**.  At any time during the effective period of the Consent Decree, Plaintiffs may request and (to the extent not covered by an applicable privilege or exemption from disclosure recognized under federal law) Defendants shall provide copies of any documents, records or other information required to be maintained under this Consent Decree. Any such request by Plaintiffs shall be in writing.  If Defendants withhold requested information on the grounds of privilege or exemption from disclosure, Defendants shall concurrently provide a detailed privilege log identifying: (i) the title, date and name of the document, record or information; (ii) the title of the author of the document, record or information; (iii) the name and title of each recipient of the document, record or information; (iv) the general subject matter of the document, record or information (without revealing any privileged material); and (v) the privilege or exemption from disclosure asserted with respect to the document, record or information.  Defendants shall not withhold on grounds of privilege or exemption from disclosure any document, record or other information that has been created or generated specifically to satisfy the requirements of this Consent Decree.  Any dispute regarding the disclosure of any document, record or other information shall be subject to Section IX (Dispute Resolution).

10.     **Requirements of Consent Decree in Addition to Other Laws**.  The monitoring, reporting, certification, record retention and other requirements of this Consent Decree are in addition to, and do not supersede or otherwise relieve Defendants of, any other monitoring, reporting, record retention and information disclosure as required by applicable federal, state or local laws or regulations.

11.     **Inspections**.  This Consent Decree shall be in addition to, and does not supersede or otherwise modify, the Regional Board's statutory and regulatory authority to conduct inspections. In addition to the Regional Board's statutory and regulatory authority to conduct inspections, the Environmental Plaintiffs shall be entitled to conduct one joint inspection of the SBRF per year. Environmental Plaintiffs shall request such inspection by notice as specified in Paragraph 24 at least 2 days in advance of the proposed joint inspection date.  Approval by the Defendants of the request shall not be unreasonably withheld.  Any dispute regarding the annual joint inspection by the Environmental Plaintiffs shall be subject to Section IX (Dispute Resolution).

**VII.    FORCE MAJEURE**

12.     For purposes of this Consent Decree, "force majeure" is defined as any event arising from one or more causes beyond Defendants' control, including the control of Defendants' employees, agents, contractors, consultants, and any other person acting on Defendants' behalf or pursuant to Defendants' authorization, which delays or prevents Defendants' performance of or compliance with any obligation or requirement of this Consent Decree, despite Defendants' best efforts otherwise to fulfill the obligation or meet the requirement in question.  "Best efforts" includes anticipating and/or addressing the effects of any force majeure event to prevent or minimize any resulting delay, non-performance or non-compliance.  "Lack of availability," when used in this

Section, means that Defendants are unable to perform the obligations in and/or meet the requirements of, this Consent Decree while complying with all applicable statutes and regulations, including but not limited to the Federal Acquisition Regulations (FAR).  The events listed below are "force majeure" events if they meet the criteria above.  Other events also may be force majeure events if they meet the criteria above.

(a)    acts of God, fire, war, insurrection, or civil disturbance;

(b)    bid protest or any litigation regarding MARAD's award of a contract related to ship maintenance, disposal, dry-docking, or towing;

(c)    restraint by court order;

(d)    lack of availability of commercial towing assets;

(e)    lack of availability of commercial dry-dock facilities;

(f)    lack of availability of commercial ship recycling services;

(g)    any strike or similar work stoppage resulting from labor dispute;

(h)    government shut-down or a government- or agency-wide prohibition of work by essential or non-essential personnel;

(i)    lack of responsive bids, as set forth in Federal Acquisition Regulation Parts 14 and 15, from qualified contractors in response to solicitations for maintenance, towing, dry-docking, removal, disposal, or other services related to the Vessels;

(j)    inability lawfully to obtain after exercise of reasonable diligence, any necessary authorizations, approvals, permits, or licenses due to action or inaction of any governmental

agency or authority other than the Department of Transportation or MARAD or its authorized contractors. Defendants shall not be deemed to have acted with reasonable diligence within the meaning of this Paragraph 12(j) unless the action for which an authorization, approval, permit or license is sought would comply with all applicable federal, state and local laws and regulations, including but not limited to, applicable federal and state water quality standards;

(k)     lack of appropriated funds;

(l)     weather events that individually or cumulatively impact the maintenance, towing, dry-docking, removal, disposal, or other services related to the Vessels;

(m)     change in applicable requirements of international, Federal or State laws, regulations, or authorities which delays or prevents Defendants' performance of or compliance with any obligation or requirement of this Consent Decree; and

(n)     requirement to dry-dock any Vessel more than once, which prevents Defendants from being able to meet the schedule pursuant to Paragraph 6(c)(1), provided that any requirement to dry-dock any Vessel more than once shall not be used as force majeure with respect to any requirement in this Consent Decree other than the schedule in Paragraph 6(c)(1).

13.     If any event occurs that Defendants reasonably believe qualifies as a force majeure event, Defendants shall notify Plaintiffs in writing, at the addresses specified in Section X (Notices), no later than 21 days after the date on which Defendants first knew, or in the exercise of due diligence reasonably should have known, of such event. Such notice shall include a discussion of: (i) each obligation or requirement of the Consent Decree that has been affected; (ii) how and why such obligation or requirement has been affected, including the reasons for and estimated length of the delay, non-performance or non-compliance; (iii) any measures Defendants have

taken or intend to take to prevent or minimize the delay, non-performance or non-compliance; and (iv) a schedule for implementation of such measures.  Defendants shall include with such notice all available documentation supporting Defendants' claim that the delay, non-performance or non-compliance is or was attributable to a force majeure event(s).

14.     If documentation or portions of documentation that is necessary to substantiate a claim that the delay, non-performance or non-compliance is or was attributable to a force majeure event also contains procurement, business-sensitive or proprietary information that is subject to a confidentiality agreement with a third party and/or an applicable legal privilege or exemption from disclosure, then Defendants shall provide such information to Plaintiffs.  Such information shall be subject to a Protective Order in the form attached as Exhibit C to the Proposed Consent Decree filed in this case on April 9, 2010 and located on the docket at entry 124.

15.     Within 21 days of receipt of the notice specified in Paragraph 13, Plaintiffs shall inform Defendants in writing as to whether they concur that Defendants' delay, non-performance or non-compliance is attributable to a force majeure event.  If Plaintiffs agree that Defendants' delay, non-performance or non-compliance is attributable to a force majeure event, the time for performance of or compliance with the applicable obligation or requirement of the Consent Decree shall be extended as the Parties agree is reasonably necessary to complete the obligation or requirement.  Subject to the Court's order as provided in Paragraph 32, the Decree will be modified in accordance with the Parties' written agreement.  The Parties shall provide the amended Decree to the Court within 10 days of reaching agreement on such a modification.

16.     If Plaintiffs do not concur that a force majeure event has occurred, or the Parties do not concur on the amount of time to complete the obligation or requirement affected by the force

majeure event, Plaintiffs or Defendants may invoke the Dispute Resolution procedure in Section

IX or Plaintiffs or Defendants may petition the Court for a modification to Paragraph 6(b) or 6(c)

of the Decree.

**VIII.   ANTI-DEFICIENCY ACT**

17.      Notwithstanding any other provision of this Decree, the obligations of this Decree are

subject to the availability of appropriated funds.  No provision of this Decree shall be interpreted

as or constitute a commitment or requirement that the United States obligate or pay funds in

contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341.

**IX.      DISPUTE RESOLUTION**

18.      Except as provided for in Section VII (Force Majeure), the dispute resolution procedure

provided for in this Section IX shall be the exclusive mechanism to resolve disputes and

disagreements arising under or with respect to this Consent Decree.  The Parties shall make all

reasonable efforts to resolve their disputes and disagreements regarding the meaning of,

compliance with and/or implementation of this Consent Decree informally and in good faith

prior to seeking any relief from the Court.  However, in the event that either an activity of

Defendants at the SBRF in alleged violation of this Consent Decree or compliance with this

Consent Decree poses an imminent and substantial endangerment to the health of persons or to

the environment, any Party may seek immediate relief from the Court and need not first meet and

confer with other parties pursuant to this Section IX.

19.      If any Party has a dispute concerning the meaning of, compliance with, and/or

implementation of this Consent Decree, that Party shall send a written notice to all other Parties

that specifies the nature of the dispute and requests resolution of the dispute.

20.     Upon receipt of written notice pursuant to Paragraph 19, the Party receiving such notice shall either send the other Party written notice within 21 days of receipt pursuant to Paragraph 19 that it intends to cure and shall cure the alleged deficiency within 60 days; or, if the Party receiving the notice pursuant to Paragraph 19 is unable to cure the alleged deficiency or disputes the alleged deficiency, that Party receiving such notice shall provide written notice to this effect to all Parties within 21 days of receipt of the notice pursuant to Paragraph 19.

21.     If the Party receiving the notice pursuant to Paragraph 19 disputes the alleged deficiency, the Parties shall initiate informal negotiations to resolve the dispute.  Such period of informal negotiations shall not extend beyond 60 days from the date on which the Party receiving the notice requests such negotiations, unless the Parties agree otherwise in writing.  If Defendants fail to remedy the alleged violation or reach an agreement with the Plaintiff during the 60-day informal negotiation period, concerning the alleged violation, Plaintiff may file a motion seeking judicial enforcement and specific performance of this Consent Decree, subject to Paragraphs 22 and 23 below.

22.     Except as provided in Paragraph 18, Plaintiffs agree not to seek judicial enforcement of this Consent Decree for alleged delays or non-performance of or non-compliance with requirements of the Decree unless all reasonable efforts, as set forth in this Section, to resolve the dispute informally between the Parties have failed and Defendants have unreasonably delayed compliance with, or unreasonably failed to perform their obligations under or to comply with, the obligations and requirements of this Consent Decree.

23.     In addition to the foregoing pre-requisites for judicial enforcement, civil contempt sanctions shall be available only with respect to an alleged violation of an Order from the Court

requiring specific performance or compliance with respect to, or other Court order requiring action to remedy, an alleged violation of this Consent Decree.  In any such proceeding for sanctions, Defendants preserve all defenses.

## X.    NOTICES

24.    All notices, submissions and communications made pursuant to this Consent Decree shall reference the title, caption and case number of this action, and shall be sent via certified U.S. Mail, overnight express mail, hand delivery or electronic means to the recipients and addresses below.  Notices shall be considered delivered upon receipt and compliance periods requiring notices shall commence starting with the date of receipt.

**To the Environmental Plaintiffs:**

**For Plaintiff Natural Resources Defense Council**:

Michael E. Wall, Senior Staff Attorney
Natural Resources Defense Council
Overnight and regular mail address:
111 Sutter Street, 20th Floor
San Francisco, CA  94104
Email: mwall@nrdc.org


**For Plaintiff San Francisco Baykeeper**:

Jason Flanders, Staff Attorney
San Francisco Baykeeper
Overnight and regular mail address:
785 Market Street, Suite 850
San Francisco, CA  94103
Email: jason@baykeeper.org


**For Plaintiff ARC Ecology**:

Saul Bloom
Arc Ecology
Overnight and regular mail address:

4634 Third Street
San Francisco, CA  94124
Email: saulbloom@arcecology.org

*//*

**To the Regional Board:**

David Elias, Engineering Geologist
California Regional Water Quality Control Board, San Francisco Bay Region
Overnight and regular mail address:
1515 Clay Street, 14th Floor
Oakland, CA  94612
Email: delias@waterboards.ca.gov

Cris Carrigan, Senior Staff Counsel
State Water Resources Control Board, Office of Enforcement
Overnight mail address:
1001 I Street
Sacramento, CA  95814
Regular mail address:
P.O. Box 100
Sacramento, CA 95812-0100
Email: ccarrigan@waterboards.ca.gov

Tara L. Mueller, Deputy Attorney General
California Office of the Attorney General
Overnight and regular mail address:
1515 Clay Street, 20th Floor
Oakland, CA  94612
Email: tara.mueller@doj.ca.gov

**To Defendants:**

Hank Ryan, Ship Operation & Maintenance Officer
U.S. Department of Transportation, Maritime Administration
Overnight and regular mail address:
201 Mission Street, Suite 2200
San Francisco, CA  94105
Email: hank.ryan@dot.gov

Jay R. Gordon, Chief, Division of Litigation and General Law
U.S. Department of Transportation, Maritime Administration
Overnight and regular mail address:
1200 New Jersey Avenue SE
Mail Stop 4

Washington, DC  20590
Email: jay.gordon@dot.gov

//

Leslie M. Hill, Trial Attorney
U.S. Department of Justice, Environment and Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986
Email:  leslie.hill@usdoj.gov

U.S. Department of Justice
Environment and Natural Resources Division
Chief, Environmental Defense Section
P.O. Box 23986
Washington, D.C. 20026-3986

25.     Any Party may change its designated recipient(s) and/or address(es) by providing written

notice of such change to all other Parties.

26.     Unless otherwise provided by this Consent Decree or by written agreement of the Parties,

any notices, submissions and communications required pursuant to this Decree shall be deemed

submitted upon mailing.

**XI.      COMPLIANCE WITH APPLICABLE LAWS**

27.     Except as provided in Section XII (Effect of Settlement and Reservation of Rights), this

Consent Decree does not relieve Defendants of their responsibility to comply with all applicable

federal, state and local laws and regulations.

**XII.     EFFECT OF SETTLEMENT AND RESERVATION OF RIGHTS**

28.     This Consent Decree resolves any and all claims that have been brought, or that arose

prior to the Effective Date and that reasonably could have been brought, by the Regional Board

or the Environmental Plaintiffs under the CWA, RCRA, NEPA, the Porter-Cologne Act, the California Health and Safety Code Chapters 6.5 – 6.98, or the California Public Resources Code Division 30 with respect to the Suisun Bay Reserve Fleet, as alleged in the Plaintiffs' operative complaints, and Plaintiffs release any and all such claims.

29.     This Consent Decree does not limit or affect the rights of any Party against any third party who is not a Party to this Decree.  This Consent Decree shall not be construed to create any rights in or grant any cause of action to any third party who is not a Party to this Decree.

30.     Except as otherwise provided in this Consent Decree, Plaintiffs reserve all legal and equitable remedies available to enforce the provisions of this Consent Decree under any federal, state or local law or regulation, and Defendants reserve all legal and equitable defenses to such enforcement under any federal, state or local law or regulation.

**XIII.   COSTS OF LITIGATION**

31.     Defendants stipulate that Plaintiffs are "prevailing parties" within the meaning of 33 U.S.C. § 1365(d), and in the case of Environmental Plaintiffs, 42 U.S.C. § 6972(e).  After entry of the Decree by the Court, the Parties will attempt to resolve the amount of any claims for costs of litigation (including reasonable attorney and expert witness fees) under 33 U.S.C. § 1365(d) or 42 U.S.C. § 6972(e).  In the event the Parties are unable to reach agreement, Plaintiffs reserve the right to file applications with the Court for such costs.

**XIV.   MODIFICATION**

32.     The Parties may modify the requirements of Paragraphs 6(b) or 6(c) by written agreement.  The Parties shall file a joint stipulation and notice to the Court for any such

modification.  Except as otherwise provided above, no material modification of this Consent Decree may be made absent a joint stipulation of all the parties and Court order.

33.     Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section IX (Dispute Resolution) except that the Party seeking the modification bears the burden of establishing that it is entitled to the requested modification.

## XV.     RETENTION OF JURISDICTION

34.     The Court shall retain jurisdiction of this matter for all purposes, including jurisdiction to resolve any disputes arising under this Consent Decree and to enforce or modify this Decree, until termination of the Decree pursuant to Section XVII (Termination).

## XVI.    FINAL JUDGMENT AND WAIVER OF APPEAL

35.     Upon entry by the Court, this Consent Decree shall constitute a final judgment, from which no appeal shall be taken except with respect to subsequent orders of the Court.

## XVII.   TERMINATION

36.     This Consent Decree shall be terminated when there has been complete compliance with the terms of Section V (Injunctive Relief).

## XVIII. SIGNATORIES AND COUNTERPARTS

37.     Each signatory to this Consent Decree certifies that he or she is fully authorized to enter into this Decree, to agree to its terms and conditions, and to execute and legally bind the Party he or she represents.

38.     This Consent Decree may be executed in counterparts.

## XIX.   INTEGRATION CLAUSE

39.   This Consent Decree constitutes the final, complete and exclusive agreement and understanding between the Parties, and supersedes all prior agreements and understandings, whether oral or written, with respect to the claims in this case.  No other document, nor any representation, agreement, understanding or promise is part of this Consent Decree, nor may such be used in construing the terms of this Decree.

Respectfully submitted,

*For Defendants:*

Dated:  March ___, 2010

BENJAMIN B. WAGNER
United States Attorney for the
Eastern District of California
TODD A. PICKLES
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2766
Facsimile: (916) 554-2900


_____  _____
IGNACIA S. MORENO
Assistant Attorney General
Environment & Natural Resources Division

LESLIE M. HILL
MICHELLE LAMBERT
Trial Attorneys
Environmental Defense Section
P.O. Box 23986
Washington, DC 20044-3986
Telephone:  (202) 514-0375
Facsimile :  (202) 514-8865
E-Mail:      leslie.hill@usdoj.gov

//

*For Plaintiffs:*

Dated:  March ___, 2010

_____
MICHAEL E. WALL (CBN 170238)
NATURAL RESOURCES DEFENSE COUNCIL
111 Sutter Street, 20th Floor
San Francisco, CA 94104
Telephone:  (415) 875-6100
Facsimile :  (415) 875-6161
E-Mail:  mwall@nrdc.org

THOMAS CMAR (*pro hac vice*)
NATURAL RESOURCES DEFENSE COUNCIL
12 North Riverside Plaza, Suite 2250
Chicago, IL  60606-9997
Telephone:  (312) 651-7906
Facsimile:  (312) 651-7919
E-Mail:  tcmar@nrdc.org

SCOTT ALLEN (CBN 178925)
LARIVIERE, GRUBMAN & PAYNE
19 Upper Ragsdale Drive, Suite 200
Monterey, CA 93940
Tel.:  (831) 649-7531; Fax: (831) 649-8835
E-Mail: sallen@lgpatlaw.com

DAVID A. NICHOLAS (*pro hac vice*)
20 Whitney Road
Newton, MA 02460
Telephone:     (617) 964-1548
Facsimile:      (617) 663-6233
E-Mail: dnicholas@verizon.net

Attorneys for Plaintiffs Arc Ecology, San Francisco
Baykeeper, and Natural Resources Defense Council

//

//

//

//

//

26

*For Plaintiff-Intervenor:*

Dated:  March ___, 2010

EDMUND G. BROWN JR.
Attorney General of the State of California


_____
CHRISTIANA TIEDEMANN (CBN 105299)
Supervising Deputy Attorney General
TARA L. MUELLER (CBN 161536)
Deputy Attorney General
1515 Clay Street, 20th Floor
Oakland, CA  94612-0550
Telephone: (510) 622-2136 (Mueller)
                   (510) 622-2218 (Tiedemann)
Facsimile:  (510) 622-2270
E-mail:      chris.tiedemann@doj.ca.gov
                   tara.mueller@doj.ca.gov

Attorneys for Plaintiff-Intervenor California
Regional Water Quality Control Board, San
Francisco Bay Region

*//*

*//*

*//*

*//*

*//*

*//*

*//*

*//*

*//*

*//*

*//*

1

## [**PROPOSED**] ORDER

2

The Consent Decree is fair, reasonable, and equitable; does not violate the law or public

3

policy; comes within the general scope of the pleadings; and furthers the objectives of the

4

statutes on which Plaintiffs' and Plaintiff-Intervenor's operative complaints are based.  For these

5

reasons, the Consent Decree is approved and entered by this Court.  *See Sierra Club, Inc. v.*

6

*Electronic Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990).

7

8

SO ORDERED.

9

Date: April 13, 2010

10

_____
GARLAND E. BURRELL, JR.
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

28